HARRISON RANDALL, Plaintiff in Error, *vs.* JOHN EDERT and Wife, Defendants in Error.

ERROR TO THE DISTRICT COURT OF SCOTT COUNTY.

Every one who purchases land from the United States by pre-emption or private entry, does so subject to the rules and regulations that govern the Land Department. All entries are made sub-ject to the "supervision and control of the Commissioner of the General Land Office," and all contests are decided by the local land officers, subject to appeal.

All parties who purchase from a pre-emptor prior to the consummation of the entry, take subject to the power of the upper office to confirm or cancel the entry that existed in relation to the original purchaser.

A. pre-empted land and sold it to B, before the entry was confirmed by the General Land Office. The entry was subsequently cancelled by that office. *Held,* That nothing passed by the deed. That had the entry been confirmed, the confirmation would have related back to the date of the original entry, and the title would have passed to B, by virtue of the covenants in the deed. The case of *Camp vs. Smith,* 8 *Minn. R.,* 155, commented upon.

Points and Authorities of Plaintiff in Error.

I.—The Plaintiff shows himself in possession of the land in question, prior to Defendant's purchase. This is notice to the world of the title of the Plaintiff. *Minor vs. Willoughby & Powers,* 3 *Minn.,* p. 238.

II.—The entry of the land by Hammond, July 28th, 1855, divested the title of the United States, and the United States cannot, any more than a private individual, resume or cancel its own grant. *Camp vs. Smith,* 2 *Minn.,* 155; *Chitty's Pre-rogatives, p.* 132, *chap.* 8; 3 *Kent's Com.,* 458–60; 7 *Pick., p.* 507.

III.—There is no authority in the law, conferred upon a

mere ministerial officer of the Land Department of the United States, to cancel any entry of lands made at the district offices in case of pre-emption, without notice to the pre-emptor or his assigns, and *a fortiori*, have such officers no right to cancel an entry after years of time have intervened, and the lands passed into the hands of *bona fide* purchasers for a valuable consideration, and without notice.

IV.—If a person has pre-empted a piece of land, fraudulently or otherwise, that he ought not to hold under our statute of uses and trusts, such person holds the land in trust for the use of the rightful owner, and a court of equity will vindicate the rights of the injured party.

V.—The land officers in this case have assumed and arrogated to themselves a power which never pertained, nor was ever claimed by either a court of law or equity; they have gone through the form of taking valuable real estate from a purchaser, without his consent, and have bestowed it upon another. They have taken the private property of one innocent holder and given it to a private person, without any compensation, consent or knowledge. If this thing can be done, whose farm or what town site is safe from the cancelling process of these powerful officers?

Points and Authorities of Defendants in Error.

I.—The copy of the duplicate is not evidence of title to the premises in the pre-emption granted.

1st. Because at common law neither the original or copy would be evidence of title.

2d. Because a copy of the receipt is not made evidence by the statute. *Sec.* 88, *p.* 686.

3d. Because the receipt itself or duplicate, is made *prima facie* evidence only while actually held by the original claimant or his assignee.

It will be conceded that at common law a receipt of purchase money is no evidence of the legal title to real estate.

II.—A Receiver's receipt is made by statute only *prima facie* evidence of the legal title, and it is inferior evidence to that of a patent; and when, after a receipt has been issued to

one person, a patent of the same land is issued to another, the patent will prevail as superior evidence of title. *Dickinson vs. Brown*, 9 *S. & M.*, 130, in *U. S. Annual Dig.* 1848, *Vol.* 2, *p.* 249, (36.)

A patent alone passes land from the United States to the grantee. *Wilcox vs. Jackson*, 13 *Peters*, 498. The fee remains in the United States until transferred by patent, which is a better legal title than a prior entry. *Carman vs. Johnson*, 20 *Miss.*, 108, in 16 *U. S. Dig. Pub. Lands*, 529 (23.) A patent is evidence that all preliminary steps have been taken, 24 *Miss.*, 118; and a patent is better legal evidence than an entry with the Register and Receiver. *Grifith vs. Durfolt*, 17 *Miss.*, (2 *Burnett*), 31. And a patent from the United States is conclusive in an action at law. *Bragnell vs. Broderick*, 13 *Peters*, 436.

And State Courts will not interfere except in cases of fraud or trust. *Lewis vs. Lewis*, 9 *Miss.*, 183; *same*, 323.

The decision of the land officers is final, under act of September 4th, 1841, except in case of fraud. *Lamont vs. Stimson*, 3 *Wis.*, 545.

And the decision of the local land officers in pre-emption cases is examinable by the Commissioners of the General Land Office for fraud or mistake, even though there be no adverse claimant. *Wynn vs. Garland*, 16 *Ark.*, 440. And the decision of the local officers, even in contested cases, may be reconsidered by the same, and decided against both. *Gray vs. McConce*, 14 *Ill.*, 343. And in all contested cases, the decision of the local land officers is subject to a revision by the General Land Office. *Pre-emption Act, Sept. 4th*, 1841, *sec.* 11.

Neither the complaint or evidence makes any case of trust, accident, fraud or mistake, upon which equity would obtain jurisdiction, to control the legal title.

L. M. BROWN, Counsel for Plaintiff in Error.

HENRY HINDS, Counsel for Defendants in Error.

*By the Court*—FLANDRAU, J.—This action was commenced

to quiet the title of the Plaintiff to lands in Scott-county. The complaint alleges possession in the Plaintiff, and an adverse claim made by Defendants. The answer puts in issue the allegation of possession, and alleges a purchase by one of the Defendants from the United States, of the land in question, prior to the first day of August, 1861, and the issuance of a patent therefor on said first day of August, and that the Defendant, Elizabeth Edert, to whom the patent was issued, is still the owner of the land in fee simple absolute.

The reply alleges that on or about the 25th day of July, 1855, the United States owned the land, at which time the United States sold and conveyed the same to one Samuel Hammond, and then alleges a series of conveyances through different parties, terminating in the Plaintiff.

The Plaintiff on the trial proved his possession, and rested. The Defendant introduced the patent from the United States to Elizabeth Edert, and rested. The Plaintiff, to rebut the effect of the patent, introduced an authenticated copy of a receipt given by the Receiver of the land office at Red Wing, on the 28th day of July, 1855, to Samuel Hammond, for the purchase money of the land in question. This was in the ordinary form of a pre-emption certificate of purchase. Accompanying the receipt was the certificate of the Commissioner of the General Land Office, authenticating the same as a true and literal exemplification of the original on file in his office, and containing the following clause:

" I do further certify that the entry of the south half of the south-west quarter of section 18, town 115, north of range 22 west, by Samuel Hammond, described in said receipt, was cancelled by this office on the 10th of August, A. D. 1858, for the reason that it conflicted with the approved pre-emption claim of Jasper Gelhage, and that the purchase money paid by Samuel Hammond for said tract of land was refunded by treasury draft, on his application therefor, March 14th, 1859."

It was then admitted by the parties that "the facts in regard to the cancellation of said receipt, and the application for, and return to, and receipt by said Samuel Hammond, of

the purchase money, are, as in the said certificate to said copy of said receipts attached."

Upon this state of the proof, judgment was rendered for the Defendants, and the Plaintiff brings error.

By our act of Congress passed July 4th, 1836, entitled "An Act to reorganize the General Land Office," it is provided " that from and after the passage of this act, the executive duties now prescribed, or which may hereafter be prescribed by law, appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the Government of the United States, shall be subject to the supervision and control of the Commissioner of the General Land Office, under the direction of the President of the United States." *Sec.* 1, *Lester's Land Laws,* 46.

In section 11 of the preemption act of September 4, 1841, (*Lester's Land Laws,* 62,) will be found the following provision : " and all questions as to the right of preemption arising between different settlers shall be settled by the Register and Receiver of the District within which the land is situated, subject to an appeal to and revision by the Secretary of the Treasury of the United States." In the erection of the Department of the Interior, the duties formerly performed by the Secretary of the Treasury, were transferred to the Secretary of the Interior. *Act of March* 3, 1849, *Lester's Land Laws, p.* 151, *sec.* 3. By section 12 of the act of September 4, 1841, the duties of the registers and receivers of the Land Offices are to be performed in regard to pre-emptions, "agreeably to such rules as shall be prescribed by the Secretary of the Treasury," (Interior).

Every one who purchases land from the United States by pre-emption or private entry, does so, subject to the rules and regulations that govern the Land Department. All entries are made subject to the "supervision and control of the Commissioner of the General Land Office," and all contests are decided by the local officers subject to appeal. An entry may be satisfactory to the register and receiver, and when returned to and supervised by the Commissioner, be found defective in

some material points which will either suspend the issuance of the patent, or cancel the entry entirely. And every decision of the local officers upon contested entries may be reversed by the upper office upon appeal. All parties who purchase from a pre-emptor prior to the consummation of the entry, take subject to the power of the upper office to confirm or cancel the same that existed in relation to the original purchaser.

In this case all that appears is, that Hammond in July, 1855, pre-empted the land in dispute and sold the same to Mary Cressey, and that after several transfers the land was purchased by the Plaintiff on the seventh day of August, 1861, which was after the cancellation of the pre-emption entry. That Hammond's entry was cancelled by the General Land Office in August, 1858, as conflicting with the approved pre-emption claim of Jasper Gelhage, and that in August, 1861, a patent was issued by the United States for the same land to one of the Defendants. The only inference that can be drawn from these facts is, that Hammond's entry was not in accordance with law, and that Gelhage had prior and paramount rights with which it conflicted, and that notwithstanding the entry was allowed by the local officers, it did not meet the approval of the upper office which was essential to its validity. Every intendment must be made in favor of the officers having done their duty when nothing appears to the contrary. We are bound to presume that the case went regularly from the local office to the upper, by return, or appeal, and was there regularly acted upon.

The Plaintiff cites our decision in the case of *Camp vs. Smith*, 2 *Minn. R.*, 155, to show that the title passed out of the United States at the time of the entry by Hammond, and that the Department had no farther control over it. The counsel has mistaken the nature of that decision. In that case the pre-emptor conveyed the land between the time of the entry and the issuing of the patent, but the entry was never disturbed, and was subsequently ratified and the patent issued to the pre-emptor. The question simply was, whether the deed made before the issuance of the patent was valid to pass the interest that the pre-emptor had gained by virtue of

his entry; we held that it was. Had the entry not received the confirmation of the upper office, the title would have failed, and the grantee been left to his covenants for redress. When however it was confirmed, the title passed to the pre-emptor's grantee by operation of the covenant of warranty in the deed. The essential difference between the case cited, and the one at bar is, that in the former the pre-emptor had conformed to the law and acquired rights under his entry, which passed to his grantee, and in the latter he had failed to acquire any rights, and consequently had none to transmit.

The judgment must be affirmed.