## GERMANIA IRON CO. et al. v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. October 2, 1893.)

### No. 281.

PUBLIC LANDS—SUIT BY UNITED STATES TO CANCEL PATENT.

The secretary of the interior having rejected certain rival applications. for a patent for a certain tract of land, a motion for a rehearing of the secretary's decision was filed. By the rules of the department the filing of such motion made it the duty of the officers of the land department to suspend all action looking to the disposal of said land until the motion for a rehearing was determined. While such motion was pending and undetermined, a clerk in the department inadvertently approved the land for patenting to a third party, and a patent was issued. On a bill filed by the United States to vacate the patent on the ground that it was issued by mistake, *held*, (1) that the United States had sufficient interest to maintain the suit, and (2) *held*, further, that in such suit it was not necessary for the United States to allege or prove that other persons than the patentee had a superior right to the land,—that it was sufficient to show that other persons whose claims were pending and undetermined might have such superior right. Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. Rep. 457, applied.

Appeal from the Circuit Court of the United States for the District of Minnesota.

In Equity. Bill by the United States of America against the Germania Iron Company, Emil Hartmann, Richmond D. Mallet, and Thomas Reed, to cancel a land patent. Reed, the patentee, made default. The other defendants answered the bill, and appeal from a decree for complainant. Affirmed.

Statement by THAYER, District Judge:

This was a bill filed by the attorney general, in behalf of the United States, to cancel a patent for certain lands situated in the Duluth land district, of the state of Minnesota, which was issued by mistake to Thomas Reed on the 20th day of November, 1889. The admitted facts on which the government predicates its right to the relief sought by the bill are, substantially, these:

On the 21st of July, 1885, the land in question being a part of the public domain, Orilie Stram adjusted a certain scrip location thereon that had been previously made, which location was duly posted in the office of the commissioner of the general land office on the 9th day of the following September. The validity of such location was contested by Fred. T. Huntress. Thomas W. Hyde and Angus McDonald also made certain pre-emption claims to some of the same lands, and the controversy thus raised came by appeal before the secretary of the interior. On February 18, 1889, the secretary disposed of the appeal, for the time being; holding that the scrip location of said Stram was invalid, and that the Hyde and McDonald claims must likewise be rejected. Thereafter, on February 23, 1889, Thomas Reed was allowed to make a soldier's additional homestead entry on a part of said lands, and to obtain a final certificate therefor, numbered 1,420. At the same time that Reed made his entry, Charles P. Wheeler, Warren Wing, and

William Stokes were present, and sought to make entries on the lands now in dispute, in pursuance of various provisions of the land laws of the United States, but they were less successful. The applications of Wheeler, Wing, and Stokes were denied, and they thereupon prosecuted appeals to the commissioner of the general land office. On the 18th of February, 1889, and long prior thereto, there was a rule in force in the department of the interior to the following effect: That motions for the review of decisions of the secretary of the interior, and applications under department rules 83 and 84, should be filed with the commissioner of the general land office, who should thereupon suspend action under the decision sought to be reviewed, and forward to the secretary such motion for review or application. Motions in behalf of Stram, Hyde, and McDonald, to obtain a review of the secretary's decision of February 18, 1889, were duly made, and filed on March 13 and 15, 1889; and, pursuant to the rule aforesaid, an order was made, suspending all action on said decision, which order was in full force on November 20, 1889, when the patent to Reed was issued. At the latter date, the appeals of Wheeler, Wing, and Stokes, heretofore mentioned, were pending and undetermined, and are still undetermined by the land department. Notwithstanding these facts, while the aforesaid motions and appeals were pending, a clerk in the general land office approved the lands in controversy for patenting to said Thomas Reed, and in consequence of such approval a patent was issued on November 20, 1889. The action of the clerk in approving the lands for patenting appears to have been induced solely by oversight, in failing to take notice of the pendency of the motions for review aforesaid, and the order made thereon suspending action under the secretary's decision of February 18, 1889. The president's signature to the patent, by his secretary, and the signature of the recorder of the general land office, were each induced by the action of said clerk in inadvertently approving the land for patenting.

The patentee, Reed, who was named as a defendant in the circuit court, suffered a default. The appellants have acquired title to the lands in controversy by mesne conveyances under Reed, but it is not claimed that, as purchasers in good faith, they have a better title than their grantor. The circuit court decreed that on the facts aforesaid, which were undisputed, the government was entitled to a cancellation of the Reed patent on the ground of accident, inadvertence, and mistake, and from such ruling the defendants below have prosecuted an appeal.

W. W. Billson, (Mr. Congdon, on the brief,) for appellants.

Richard Olney, Atty. Gen., Eugene G. Hay, U. S. Dist. Atty., and Robert G. Evans, for the United States.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the facts, delivered the opinion of the court.

The learned counsel for the appellants does not challenge the right of the attorney general, under the laws of the United States, to file a bill in behalf of the government to obtain the cancellation of a patent on the ground of fraud, accident, or mistake, where the government has an interest in, or is under an obligation in respect to, the relief sought; and, in view of the decisions of the supreme court of the United States, the right in question could not be successfully challenged. U. S. v. Tin Co., 125 U. S. 273, 285, 286, 8 Sup. Ct. Rep. 850; U. S. v. Beebe, 127 U. S. 338, 342, 8 Sup. Ct. Rep. 1083; U. S. v. Railway Co., 141 U. S. 358, 380–382, 12 Sup. Ct. Rep. 13. But it is urged as grounds for reversal (and these are the only points which we deem it necessary to consider) that, upon the undisputed

facts disclosed by the present record, the United States had no interest entitling it to maintain the bill, and that, in any event, it was not entitled to a decree canceling the Reed patent on account of the mistake disclosed by the bill, unless it alleged, and affirmatively proved, that other persons than Reed had a superior right to the land, and would probably have prevailed in the controversy before the secretary of the interior, if the mistake complained of had not forestalled a decision.

We are compelled to dissent from both of these propositions. The United States, in disposing of the public domain, through the action of its land department, cannot be relegated to the position of an ordinary private vendor of lands. As has been frequently declared, in substance, the government is clothed with a trust in respect to the public domain. It is charged with the duty of protecting it from trespasses and unlawful appropriation, and likewise with the duty of enforcing the laws which have from time to time been enacted by congress, prescribing the terms and conditions upon which individuals may acquire a title to portions thereof. For the purpose of supervising the execution of such laws, and all proceedings taken thereunder, it has created a land department, which is recognized as pertaining to the executive branch of the government; and this department has, in turn, established rules and regulations for the orderly conduct of its business, which, within certain well-defined limits, have the force and effect of law, and on the due observance of which all citizens have the right to rely. Smelting Co. v. Kemp, 104 U. S. 636, 640; U. S. v. Beebe, supra; U. S. v. Railway Co., supra.

Again, as the land department is charged with the execution of the laws relating to the sale and disposition of the public lands, it has a primary jurisdiction to hear and determine all contests involving claims to portions of the public domain; and the decision of the proper officers of the land department, upon questions of fact properly determinable by them, cannot be assailed in a collateral proceeding. Smelting Co. v. Kemp, supra; Beard v. Federy, 3 Wall. 478, 492; Marquez v. Frisbie, 101 U. S. 473, 476. A patent for lands, when issued, thus becomes a powerful weapon of offense or defense; and for both of these reasons—that is, because of the primary jurisdiction lodged in the land department, and the weight accorded to its decisions—the courts have, on various occasions, refused to take any action that would interefere with or forestall the final action of that department in a controversy properly pending before it. Marquez v. Frisbie, 101 U. S. 473, 475; Casey v. Vassor, 50 Fed. Rep. 258.

In view of these considerations, it cannot be successfully maintained that the United States had no interest in, and was under no obligation in respect to, the relief sought, that entitled it to maintain the present bill, or that it was bound to show affirmatively, as a condition precedent to a decree in its favor, that Reed was not entitled to the land. By sheer accident—by an oversight of a subordinate clerk—a person had obtained a patent for public land

said to be worth $75,000, not only in violation of a long-standing rule of the department, but contrary to an express order of the commissioner of the general land office, suspending, for the time being, all action "looking to a disposal of the land." The interest of the government lies in its obligation to its citizens to see that the rules and regulations made by the land department for the guidance and protection of the citizen are faithfully observed, and in the further fact that a primary jurisdiction vested in one of the co-ordinate branches of the government has been inadvertently wrested from it, and transferred to another, where one of the claimants, in view of the outstanding patent, will be compelled to pursue the contest with his adversary at a great disadvantage. And, having such an interest in the prosecution of the suit, the courts will not compel the government, as a condition precedent to obtaining relief, to try the very question which was pending before the land department at the time it lost jurisdiction, and to show affirmatively that some other person than the patentee had a superior right to the land. It is sufficient for the purposes of this suit that some other person may have a superior right, and that it is the function of the land department to determine that question in the first instance.

Touching the question of the interest of the government to maintain the present bill, the views which we have expressed find support in a recent decision heretofore cited. U. S. v. Railway Co., 141 U. S. 358, 380, 12 Sup. Ct. Rep. 13. In that case it appeared that, through a mistake on the part of the officers of the land department, certain lands had been wrongfully patented to a railway company, as a part of its land grant, on which lands many persons had settled, claiming a right to do so under the homestead and pre-emption laws, although the officers of the land department had not permitted such settlers to do any act with them, officially, for the purpose of perfecting their titles. On a bill filed by the attorney general, in behalf of the United States, to vacate said patent, Mr. Justice Harlan said, concerning the right of the government to sue, "that it was under an obligation to claimants under the homestead and pre-emption laws to undo the wrong alleged to have been done by its officers, in violation of law, by removing the cloud cast upon its title by the patents in question, and thereby enable itself to properly administer these lands, and give clear title to those whose rights may be superior to those of the railway company." In other words, the court refused to compel the settlers to prosecute a private suit against the holder of a patent which had been inadvertently issued, holding that it was the right and duty of the government to sue, in such cases.

The case of Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. Rep. 457, more pointedly supports the views that we have expressed. In that case a notation opposite a particular tract of land, described on a list of lands that had been selected by the state of Nevada, to the effect that it was a "mill site," was erased while such list was on file in the land department, awaiting the approval of the secre-

tary of the interior. It was conceded, for the purpose of the decision, that the erasure was due to inadvertence and mistake. The existence of the notation would have prevented the secretary of the interior, in the orderly discharge of his duties, from approving the list, as it was his province to do under the act authorizing the state of Nevada to select certain lands, until a pending controversy as to the right of the state to select the particular tract had been determined. But the accidental erasure of the notation led the secretary of the interior to approve the list, and forward the same to the governor of the state. On a bill filed by the United States against a person who had a contract with the state to purchase the tract of land noted as a "mill site," to cancel such contract of sale, and to divest his title, on the ground that the lands had been improperly certified to the state through fraud and mistake, it was held that the United States was entitled to the relief sought solely on the ground of mistake. And to the argument strongly urged against the United States, that it was not entitled to relief because, in any event, under existing laws, the state had an undoubted right to select the particular tract, and must have prevailed in any controversy touching that right, the court answered, in substance, that, conceding such to be the case, there was a limited discretion imposed on the secretary of the interior in the matter of approving the selection, which, through accident and mistake, he had been deprived of the right to exercise; that, but for the erasure of the notation, the secretary might, at least, have withheld his approval until the right of selection under existing laws had been finally determined by the department, or until some relief had been afforded by special act of congress to the party who contested the state's right of selection.

It must be conceded, we think, that the last-mentioned decision strongly supports every position which has been assumed by the government, even if it is not decisive of the present controversy. Our conclusion is that the decree of the circuit court was right, and it is hereby affirmed.