**AMERICAN MORTG. CO. OF SCOTLAND, Limited, v. HOPPER et al.**

(Circuit Court of Appeals, Ninth Circuit. October 2, 1894.)

No. 154.

1. STARE DECISIS—RULE OF PROPERTY.

Decisions of a circuit court of the United States, from which no appeals were taken, cannot be regarded as establishing a rule of property to which it is the duty of the circuit court of appeals to adhere under the doctrine of stare decisis.

2. PUBLIC LANDS—PRE-EMPTION—CANCELLATION OF ENTRY.

The issuance to a pre-emptor of a final receipt or certificate of payment by a receiver of a local land office does not deprive the land department of control over, or the United States of title to, the land; and such department may cancel the entry at any time before a patent is issued, when its officers are convinced that the entry was fraudulently made, subject to the right of the pre-emptor to have the action of the department reviewed by the courts.

3. SAME—ISSUANCE OF PATENT TO THIRD PERSON—ACTION BY PRE-EMPTOR TO RECOVER LAND.

Where the land department cancels an entry by a pre-emptor, after issuance to him of a final certificate of payment, on the ground that the entry was fraudulent, and issues a patent to another, the burden is on such pre-emptor, or those claiming under him, in an action to recover the land of such patentee, to show that the department erred in adjudging the title to defendant, and that plaintiff was entitled to a patent, by proof that the entry was valid as against the government.

4. SAME—VESTED RIGHT TO LAND—ENTRY PROCURED BY FRAUD.

A pre-emptor who makes his payment and receives his final certificate acquires no vested interest in the land, where his entry and certificate are procured by fraud.

5. SAME—BONA FIDE PURCHASER—WHAT CONSTITUTES.

A pre-emptor who has his final receipt and certificate of purchase has only acquired the right to a patent, provided his acts were legal, and such as to warrant the issuance of a patent to him; and one who purchases from him is not entitled to protection as a bona fide purchaser. 56 Fed. 67, affirmed.

Appeal from the Circuit Court of the United States for the District of Oregon.

Action by the American Mortgage Company, of Scotland, Limited, against Thomas R. Hopper and others, to recover land. From a judgment dismissing the bill (56 Fed. 67), complainant appeals. Affirmed.

This is a suit instituted by appellant to have the appellees decreed to hold the legal title to the S. W. ¼ of section 4, township 2 N., of range 31 E. of the Willamette meridian, acquired by him under a patent from the United States in trust for appellant, and to compel the appellees to convey to it such title, and to surrender to it the possession of said premises. Appellant's claim is based upon a pre-emption entry made by one George Waddel. The claim of the appellees is under a homestead title. The facts are stipulated, and the essential points are as follows: On October 10, 1882, Waddel, being a qualified pre-emptor, made a cash entry under the pre-emption laws of the United States of the land in controversy. He paid thereon $400, and received a duplicate receiver's receipt therefor, which was duly recorded in the records of deeds of Umatilla county, where the land in question was situated. On October 11, 1882, Waddel obtained a loan from the Oregon & Washington Mortgage Savings Bank for $850, and executed his note and mortgage upon the property in question to secure the loan. In effecting this loan the bank acted as the agent of appellant, to which it duly assigned the note and mortgage on

October 25, 1882; the mortgage and assignment thereof being both duly recorded on the respective dates of their execution. On September 10, 1885, appellant brought suit against Waddel and his successors in interest to foreclose the mortgage. A decree of foreclosure was entered February 13, 1886, and the property was sold to appellant May 1, 1886, for $1,250. The sale was thereafter confirmed, and on October 24, 1887, the sheriff executed his deed to appellant, and the deed was then duly recorded. On May 5, 1885, the appellee Thomas R. Hopper made application in the local land office to enter the land in dispute under the homestead laws of the United States, and filed a contest against the entry of Waddel, charging that such .entry was made by Waddel for the use and benefit of another, and that thereby the entry had been effected in violation of the pre-emption laws of the United States. The commissioner of the general land office ordered a hearing as to the validity of Waddel's entry, and the result of this hearing was that on November 30, 1885, Waddel's entry was canceled in the local land office; and thereafter such cancellation was approved by the commissioner of the general land office, and Hopper was permitted to make his homestead entry. In the regular course of the proceedings had under this homestead entry, a patent was issued to Hopper for the land on June 12, 1891, which patent was duly recorded in the proper records of Umatilla county on August 4, 1891. The money paid by Waddel is still retained by the government. The cancellation of Waddel's entry was on the ground that it was fraudulently made for the benefit of another person. Neither the savings bank nor appellant was made a party in the proceedings to contest the Waddel entry, and neither had actual knowledge of any failure by Waddel to comply with the laws of the United States under which the entry was made, nor was appellee Hopper made a party defendant in the foreclosure suit, although he was in possession of the premises at the time. Prior to the commencement of this suit, appellant brought suit in ejectment against appellees, and the circuit court held that ejectment would not lie, and that the only remedy was in equity. Mortgage Co. v. Hopper, 48 Fed. 47. In this suit the circuit court dismissed the bill of complaint, and entered judgment in favor of appellees for their costs. 56 Fed. 67.

Snow & McCamant, for appellant.

Stott, Boise & Stott, for appellees.

Before McKENNA, Circuit Judge, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). 1. Preliminary to any consideration of this case upon its merits, it becomes necessary to notice the contention of appellant that, under the decisions of the circuit court of the United States for the district of Oregon, in Smith v. Ewing, 23 Fed. 741, and Wilson v. Fine, 40 Fed. 52, a rule of property has been established which it is the duty of this court to adhere to upon the doctrine of stare decisis, and that the judgment herein should be reversed upon this ground, without any review of the suit upon its merits. An adherence to the doctrine of stare decisis, in a proper case for its application, is undoubtedly necessary to preserve certainty and uniformity in the stability and symmetry of our jurisprudence. When the courts of last resort have announced principles affecting the acquisition of title to real estate, and the principles thus announced have been long established, frequently recognized and conformed to, and property rights have been acquired thereunder, it has generally been held that such decisions should not be overturned, although the principles announced therein might otherwise be questioned; but our attention has not been called to any decided case directly upon the question here involved, and, from

the diligence of counsel in citing cases upon other points, it is extremely doubtful if any could be found where the doctrine of stare decisis has been applied to the decision or decisions of a circuit court of the United States from which no appeal was taken. There are seven districts in this circuit, and it would be a strange doctrine to advance, if the decisions in the different districts were not uniform, that this court would be bound to adhere to such decisions in each district, because a rule of property was involved, without regard to the merits of the case. The contention of appellant upon this point cannot be maintained. In The Madrid, 40 Fed. 677, Justice Lamar said:

"The decisions of the circuit courts of the United States not being uniform upon the general question at issue in this case, it can hardly be said that any of them has become a rule of property, within the principle of the doctrine of stare decisis."

2. The merits of this case present several important questions. In Smith v. Ewing the court proceeded upon the theory that when a certificate of purchase is issued to a pre-emptor in due form, and no appeal is taken, the land described in the certificate becomes the property of the pre-emptor. "He has the equitable title thereto, and has a right to the legal one as soon as the patent can issue in the due course of proceeding." If it be true that the issuance of a final receipt or certificate of payment by the receiver of a local land office absolutely ends the control of the land department over the land, and deprives the United States of the title thereto, then it would necessarily follow that the act of the commissioner in this case in setting aside and canceling the entry of Waddel would be null and void. But is this principle correct? How stand the decisions of the various courts upon this subject? What are the conclusions to be drawn therefrom? The authorities are too numerous to be singly reviewed. The facts too variant to be stated. We are of opinion that the general trend and logical effect of the decisions of the supreme court of the United States virtually establish the following propositions concerning the disposition of the public lands of the United States, viz.: (1) That the land department of the government has the power and authority to cancel and annul an entry of public land when its officers are convinced, upon a proper showing, that the same was fraudulently made; (2) that an entryman upon the public lands only secures a vested interest in the land when he has lawfully entered upon and paid for the same, and in all respects complied with the requirements of the law; (3) that the land department has control over the disposition of the public lands until a patent has been issued therefor and accepted by the patentee; and (4) that redress can always be had in the courts where the officers of the land department have withheld from a pre-emptioner his rights, where they have misconstrued the law, or where any fraud or deception has been practiced which affected their judgment and decision. Bell v. Hearne, 19 How. 252; Gaines v. Thompson, 7 Wall. 347; Litchfield v. Register and Receiver, 9 Wall. 575; Secretary v. McGarrahan, Id. 298; Johnson v. Towsley, 13 Wall. 72; Myers v. Croft, Id. 291; Yosemite Val. Case, 15 Wall. 77; Shepley v. Cowan, 91 U. S. 330; Moore v. Robbins,

96 U. S. 538; Marqueze v. Frisbie, 101 U. S. 473; Quinby v. Conlan, 104 U. S. 420; Smelting Co. v. Kemp, Id. 636; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122. The same principles have been announced in the circuit court of appeals (U. S. v. Steenerson, 1 C. C. A. 552, 50 Fed. 504; Germania Iron Co. v. U. S., 7 C. C. A. 256, 58 Fed. 334; Mill Co. v. Brown, 7 C. C. A. 643, 59 Fed. 35), and in several of the state courts (Swigart v. Walker [Kan.] 30 Pac. 162, and numerous authorities there cited). In Cornelius v. Kessel the supreme court of the United States said:

"The power of supervision possessed by the commissioner of the general land office over the acts of the register and receiver of the local land offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the land department. If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department. But the power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property, and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation, in that way, of such interest, will be corrected whenever the matter is presented so that the judiciary can act upon it."

The commissioner of the general land office had the power to supervise the action of the register and receiver of the local land office, and to annul the entry made by Waddel, if in his judgment the proofs showed that such entry was fraudulently made, and was attempted to be sustained upon false testimony. But such action of the commissioner is not conclusive, and Waddel or his grantee would still be entitled to establish his right to the land in question in any court of competent jurisdiction, by proving that his entry was legal and valid, and that he had fully performed all the acts required of him by the law to perfect and complete his pre-emption entry. The finding of the commissioner of the general land office that the entry was made for the benefit of another was without notice to Waddel or appellant. Appellant was entitled to have its day in court. This it had in the present suit. The opportunity was afforded it to prove, if it could, that the entry made by Waddel was in all respects valid. It made no attempt to show that this entry was not fraudulent. It rested its case upon the fact that the entry was regularly made by a qualified pre-emptor; that the land was paid for, and the receipt of the register and receiver of the local land office given therefor,—and upon these facts contended, and still insists, that the commissioner had no power to cancel the entry on the ground that it was fraudulently made. The appellees relied upon the patent from the government of the United States. The suit is brought to obtain a decree declaring that appellant is entitled to the patent which was issued to appellee Hop-

per. To entitle it to this relief it was essential for it to affirmatively show that, if the law had been properly administered, the title would have been awarded to it. The suit cannot be maintained simply upon a showing that the land department erred in adjudging the title to the patentee. These principles are well settled, both in this court and in the supreme court of the United States. Mill Co. v. Brown, 7 C. C. A. 643, 59 Fed. 35; Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. 782; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249. In Lee v. Johnson, the court, upon this subject, said:

"The defendant in the court below (the plaintiff in error here) is the holder of a patent of the United States for a parcel of land in Michigan issued to him under the homestead laws, and the present suit was brought to charge him as trustee of the property, and to compel a conveyance to the plaintiff. The patent having been issued by officers of the land department, to whose supervision and control are intrusted the various proceedings required for the alienation of the public lands, all reasonable presumptions are indulged in support of their action. It cannot be attacked collaterally, but only by a direct proceeding instituted by the government or by parties acting in its name and by its authority. If, however, those officers mistake the law applicable to the facts, or misconstrue the statutes, and issue a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake, and compel the transfer of the legal title to him as the true owner. The court, in such a case, merely directs that to be done which those officers would have done if no error of law had been committed. The court does not interfere with the title of a patentee when the alleged mistake relates to a matter of fact, concerning which those officers may have drawn wrong conclusions from the testimony. A judicial inquiry as to the correctness of such conclusions would encroach upon a jurisdiction which congress has devolved exclusively upon the department. It is only when fraud and imposition have prevented the unsuccessful party in a contest from fully presenting his case, or the officers from fully considering it, that a court will look into the evidence. It is not enough, however, that fraud and imposition have been practiced upon the department, or that false testimony or fraudulent documents have been presented. It must appear that they affected its determination, which otherwise would have been in favor of the plaintiff. He must in all cases show that, but for the error or fraud or imposition of which he complains, he would be entitled to the patent. It is not enough to show that it should not have been issued to the patentee."

In the present case there is no pretense that any fraud, deception, or imposition was practiced upon the officers of the land department in obtaining the patent issued to appellee Hopper. There was no proof offered tending to show that Waddel's entry was valid, or that it was made in good faith. The stipulated facts show that his original entry was canceled by the commissioner of the general land office for the reason that it was made upon false testimony, and was not for his own benefit, but was for the benefit of other persons. The burden of proof was upon appellant to show that it was entitled to a patent, and it was essential for it to prove that Waddel's entry was valid, as against the government of the United States. The conclusions of the land department upon the invalidity of Waddel's entry, having been arrived at apparently within the scope of its authority, are prima facie correct, and, appellant having assailed their correctness, it devolved upon it to affirmatively show that the conclusions were illegal and unauthorized. It cannot fairly be said that Waddel had acquired any vested right to the

property, if it be true that his entry upon the lands was secured by fraud. In U. S. v. Steenerson, 1 C. C. A. 552, 50 Fed. 507, the method whereby vested rights to public lands are acquired is clearly and correctly stated. There the circuit court held that the entry made by one Hanson, and the issuance to him of a certificate of final payment by the receiver of the local land office, regardless of the question of fraud in such entry, conveyed, as against the United States, the title and right of possession of such realty to the pre-emptor in such cause; that the United States, in order to revest the title in itself, must institute judicial proceedings to set aside the apparent or defeasible title vested in the pre-emptor and his grantees. The court of appeals, upon this point, said:

"In support of this view, many decisions of the supreme court are cited by counsel, in which it is held that, when the right to a patent for lands has once become vested in a purchaser or pre-emptor, the same are segregated from the public domain, are no longer subject to entry, and the vested right to the patent thereto is equivalent to a patent actually issued. See Carroll v. Soffard, 3 How. 441; Witherspoon v. Duncan, 4 Wall. 210; Stark v. Starrs, 6 Wall. 417; Myers v. Croft, 13 Wall. 291; Wirth v. Branson, 98 U. S. 118; Simmons v. Wagner, 101 U. S. 260; Deffeback v. Hawke, 115 U. S. 405, 6 Sup. Ct. 95; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122. The principle on which these decisions are based is that when a homesteader or pre-emptor has in good faith performed all the acts which, under the provisions of the statutes of the United States, are necessary to complete his right to the land, then he becomes equitably the owner of the same, and the United States holds the naked legal title as a trustee for his benefit. For the protection of his rights thus acquired, it is held that, in a contest involving the title of the land, an established right to a patent will be deemed to be the equivalent of a patent. This rule, however, has been adopted solely as a means for the protection of those who have in good faith established a right to a patent by performance of the requisite conditions. The final certificate or receipt acknowledging payment in full, and signed by the officers of the local land office, is not in terms nor in legal effect a conveyance of the land. It is merely evidence on behalf of the party to whom it is issued. In a contest involving the title to land, wherein a person claims adversely to the United States, it is open to such claimant, notwithstanding the legal title remains in the United States, to prove that by performance on his part of the requisite acts he has become the equitable owner of the land, and that the United States holds the legal title in trust for him; but as the claimant in such case has not received a patent or formal conveyance, and has not become possessed of the legal title, he is required to show performance on his part of the acts which, when done, entitle him under the law to demand a patent of the land. When evidence of this kind is offered on behalf of the claimant, it is open to the United States to meet it by proof of any fact or facts which, if established, will show that the claimant has not become the real owner of the realty. If it be true, in a given case, that the entry of the land was not made in good faith, but in fraud of the law, certainly it cannot be said that the claimant has become the equitable owner of the land, and that the United States is merely a trustee holding the legal title for his benefit. Fraud vitiates any transaction based thereon, and will destroy any asserted title to property, no matter in what form the evidence of such title may exist. The Amisted, 15 Pet. 518; League v. De Young, 11 How. 185."

Several of the authorities cited by appellant have relation to entries made in good faith, in strict conformity with the law. The distinction between such cases and entries made in fraud of the law, although otherwise regular in form and procedure, should be constantly kept in view. In the former cases, vested rights may

be said to accrue upon performance of the conditions required by law. In the latter, no vested rights can be acquired by the fraud of the entryman, however regular the proceedings may have been. The conflict in the decisions upon this subject have chiefly arisen upon the ground that this distinction has either been overlooked or ignored, and the general observations of the courts have been applied without special reference to the facts, or the particular character of the suit, or manner in which the questions were presented. It is conceded that in all cases where the pre-emptor has acted in good faith, has fully complied with the provisions of the statute, has not been guilty of any fraud, and has done no act inconsistent with the law, he has acquired a right of which he cannot arbitrarily be deprived by the act of the commissioner of the general land office. Why? Because, as tersely stated by the court in Myers v. Croft, supra, "the object of congress was attained when the pre-emptor went, with clean hands, to the land office, and proved up his right, and paid the government for his land." This doctrine is fully recognized; but it would be a perversion of the law, and of all the cardinal principles of interpretation, to declare that such authorities support the views so earnestly contended for by appellant. It would open wide the door for the perpetration of numerous frauds of various kinds in the sale and disposition of the public lands. It may be true, as claimed by appellant, that virtuous indignation, under a mistaken belief that there had been a wholesale commission of such frauds, led the commissioner of the general land office to go to unwarranted extremes in the other direction, and resulted in the reversal of many of his acts by the judicial authorities. But this only proves the soundness and stability of the rules we have announced in protecting the rights of all parties concerned. If the commissioner, in any given case, has exceeded his authority or denied to a pre-emptor his legal rights, the remedy is by application to the courts. A pre-emptor who has acted in good faith has nothing to fear. He cannot complain as long as he has the opportunity to have his day in court, and to there establish the fact that he has complied with the law, and has not been guilty of any fraud.

3. Appellant claims that it is a bona fide purchaser for value, and that it is entitled to protection upon this ground. The law is well settled that the purchaser of an equitable title takes only such interest in the property as his grantor had at the time of his purchase. Waddel, by his certificate of purchase, only obtained the right to a patent for the land provided his acts were legal, and in all respects such as to warrant the issuance of a patent to him. His rights were in a measure dependent upon the subsequent action of the land department, within its legitimate authority, of ascertaining whether he had complied with all the prerequisites prescribed by law, and whether he was lawfully entitled to the land in question. His purchase of the land was subject to the rules and regulations of the land department. It is true that his entry was sufficient to satisfy the register and receiver of the local land office; but it was subject to the control

and supervision of the commissioner of the general land office, and the action of the register and receiver was liable to be reversed upon appeal. When appellant purchased the land, it took it subject to the final action of the land department, and to such proceedings as might thereafter be had in the courts to affirm or set aside the rulings of the officers of such department in regard thereto. It purchased the land before the issuance of a patent. The legal title was still in the government. It therefore obtained, by its purchase, only an equitable interest in the land, and is not, for the reasons stated, entitled to protection as a bona fide purchaser. Shirras v. Caig, 7 Cranch, 34; Vattier v. Hinde, 7 Pet. 252; Boone v. Chiles, 10 Pet. 177, 210; Smith v. Custer, 8 Dec. Dep. Int. 269; Root v. Shields, Woolw. 341, Fed. Cas. No. 12,038; Randall v. Edert, 7 Minn. 450 (Gil. 359); Shoufe v. Griffiths (Wash.) 30 Pac. 93. In Smith v. Custer, supra, Secretary Vilas clearly enunciated the principles applicable to this case. He said:

"The pre-emption purchaser takes, by his final proofs and payment and his certificate of purchase, only a right to a patent for the public lands in case the facts shall be found by the general land office and the interior department, upon appeal, to warrant the issuance of it. Whatever claim to patent he possesses by virtue of his payment and certificate is dependent upon the further action of the department, and its future finding of the existence of the conditions, and his compliance in fact with the prerequisites prescribed by law to the rightful acquisition of the public lands he claims. This being so, it is plain that the purchaser can acquire from the entryman no greater estate or right than the entryman possesses."

The judgment of the circuit court is affirmed.