Argued 14 February, decided 9 April, 1907.

## BUDD *v.* GALLIER.

89 Pac. 638.

EXECUTION—LIABILITY OF EQUITABLE INTEREST—JUDGMENT.

1. An equitable interest in real property is not subject to levy and sale on execution, and a judgment is not a lien thereon.

PUBLIC LAND—INTEREST OF ENTRYMAN—LIEN OF JUDGMENT AFTER IS-
SUANCE OF FINAL RECEIPT.

2. Where an entryman on government land completes the required residence on the tract, and makes his final payment, receiving a receipt therefor, he thereby acquires more than an equity, he has an inchoate legal title that is included within the meaning of the expression "real property," used in Section 205, B. & C. Comp., providing that a judgment properly docketed shall be a lien on the real property of the defendant in the county where such judgment is docketed.

Where one has made final proof and paid the purchase price of land applied for under the timber and stone act,* and received the final receipt therefor, such land becomes "real property" of the purchaser and subject to the lien of a judgment docketed against him.

JUDGMENT—DOCKETING IMMEDIATELY—DIRECTORY STATUTE.

3. The provision in Section 205, B. & C. Comp., that the clerk shall enter a judgment in the proper docket "immediately" after it has been entered, is directory only, and a delay by the clerk in performing his duty does not affect the lien from the time when the judgment is docketed.

SAME—CASE UNDER CONSIDERATION. '

4. The lien of a judgment on real property created by the filing of a transcript of a judgment from another county, under Section 205, B. & C. Comp., is not affected by the fact that the clerk's certificate to the transcript shows it to be a true copy of the original "judgment lien docket," though in the statute, Section 584, B. & C. Comp., such record is called a "judgment docket," where it appears from the entry of the transcript that the judgment was originally entered in a book in which the judgments and decrees of the court were regularly docketed, and which contained the proper rulings and headings provided by law for a judgment docket. ' :

From Coos: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit for an injunction by J. Danly Budd against Stephen Gallier, as sheriff, and W. B. Andrews. On June 15,

---

*Act Cong. June 3, 1878 : 20 Stat. U. S. 89, c. 151 ; U. S. Comp. St. 1901, p. 1545; 7 Fed. Stat. Ann. 300.

1892, W. B. Andrews recovered judgment for $213.40 against W. L. Dysinger in the circuit court for Lane County. In June. 1902, Dysinger filed his sworn statement or application in the United States Land Office at Roseburg for the purchase of 160 acres of public land in Coos County, under the act of Congress of June 3, 1878 (20 Stat. at Large, p. 89, c. 151: 7 Fed. Stat. Ann. 300: U. S. Comp. St. 1901, p. 1545), known as the timber and stone act. On June 14th following, Andrews caused his judgment to be docketed in the circuit court docket of Lane County, and on July 25th filed a transcript of such entry in the office of the clerk of Coos County, and the same was immediately entered in the proper judgment docket of that county. On August 26, 1902, Dysinger made his final proof, paid the purchase price of the land applied for by him and received from the local land office a receipt or certificate of such payment, and on the same day conveyed the land to the plaintiff by a sufficient warranty deed. On February 27, 1903, Andrews caused execution to issue on the judgment recovered by him against Dysinger and the land in question to be sold thereunder. The plaintiff thereafter commenced this suit to enjoin the sheriff from executing a deed to the purchaser at such sale and to remove an alleged cloud on his title caused by Andrews' judgment. A demurrer to the complaint was sustained and the suit dismissed, and the plaintiff appeals.     AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John Thomas Long.*

For respondents there was a brief over the names of *Joseph William Bennett* and *F. W. Benson,* with an oral argument by *Mr. Bennett.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The principal question for decision is whether the judgment of Andrews against Dysinger was a lien upon the property in controversy at the time of the conveyance to the plaintiff. The statute provides:

"From the date of docketing a judgment * * such judgment shall be a lien upon all the real property of the defendant

within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon": B. & C. Comp. § 205.

The contention for the plaintiff is that "real property," within the meaning of this statute, is only that to which the judgment debtor has full and complete legal title, and, since the patent had not issued to Dysinger at the time of his conveyance to plaintiff, he had only an equitable title, the legal title being in the government, and therefore the Andrews judgment was not a lien on the property so conveyed. It may be regarded as settled that a judgment is not a lien on a mere equitable interest or title, which can only be ascertained, established or made available in a court of equity: *Smith* v. *Ingles,* 2 Or. 43; *Bloomfield* v. *Humason,* 11 Or. 229 (4 Pac. 332); *Silver* v. *Lee,* 38 Or. 508 (63 Pac. 882). In each of these cases the judgment debtor had no title to the property sought to be charged with the lien. In the Smith and Silver cases, he had purchased the property and caused it to be conveyed to another for the purpose of defrauding creditors, and in the Bloomfield case the title was held by a trustee. The interest of the judgment debtor, therefore, was such as a court of equity alone could take notice of and which required the aid of such a court to establish and make available. There was consequently no interest of the judgment debtor which a court of law could recognize or to which the judgment lien could attach. His right was a mere equity and the claim of his creditors could be worked out only through a suit in equity to which all persons claiming an interest in the property must or should be made parties, and in which their respective rights could be ascertained and determined and a decree rendered directing the sale of some certain and definite title.

2. But a purchaser of land from the Government of the United States, who has in good faith fully complied with the law providing for its sale, paid the purchase price and received a final certificate or receipt, has more than a mere equity. He has a substantial title to the property which he may devise or .

convey and which descends to his heirs. The technical legal title remains in the government until the patent has issued, but the real beneficial title is in the purchaser, and it is his "real property." Where a purchaser complies with the provisions of the law for the disposition of public lands, pays the purchase price and receives a final receipt or certificate therefor, he has done all that is required to vest the complete title in him, and he thereby acquires a title of which he cannot be deprived by the government except for fraud or mistake. He may sell or devise the same at pleasure, and may maintain an action of ejectment to recover its possession. In short, he has the substantial and beneficial title, or, as some of the books say, "the inchoate legal title." When the right to a patent once becomes vested, it is equivalent, so far as the government is concerned, to a patent actually issued. The execution and delivery of a patent are mere ministerial acts of the officers charged with that duty, and when issued relate back to the date when the right thereto became perfected: *Witherspoon* v. *Duncan*, 74 U. S. (4 Wall.) 210 (18 L. Ed. 339); *Stark* v. *Starr*, 73 U. S. (6 Wall.) 402 (18 L. Ed. 927); *Barney* v. *Dolph*, 97 U. S. 652, 656 (24 L. Ed. 1063); *Deffeback* v. *Hawke*, 115 U. S. 392 (29 L. Ed. 423: 6 Sup. Ct. 95); *Cornelius* v. *Kessel*, 128 U. S. 456 (32 L. Ed. 482: 9 Sup. Ct. 122). The final certificate may, of course, be canceled by the government for fraud or mistake, and one succeeding to the grantee's interest prior to the issuance of a patent takes subject to such contingency: *Hawley* v. *Diller*, 178 U. S. 476 (44 L. Ed. 1157: 20 Sup. Ct. 986); *American Mortgage Co.* v. *Hopper*, 64 Fed. 553 (12 C. C. A. 293). But a patent, after it has issued, may be canceled or annulled for like reasons. In this regard there is no essential difference, so far as the grantee is concerned, between a certificate and a patent, except in the tribunal having jurisdiction of the matter. Before patent has issued, the cancellation may be made by the land department, but after patent, the remedy is in the courts.

The right of a purchaser to land from the United States

after the payment and acceptance of the purchase price was before the supreme court in *Carroll* v. *Safford,* 44 U. S. (3 How.) 441 (11 L. Ed. 671), and it is there said: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be canceled by the United States than a patent. It is true, if the land had been previously sold by the United States, or reserved from sale, the certificate or patent might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee. It is said the fee is not in the purchaser, but in the United States, until the patent shall be issued. This is so, technically, at law, but not in equity. The land in the hands of the purchaser is real estate, descends to his heirs, and does not go to his executors or administrators. In every legal and equitable aspect it is considered as belonging to the realty." And in *Sillyman* v. *King,* 36 Iowa, 207, in referring to the same matter, the court says: "When land is purchased by an individual from the United States it is no longer the property of the government, but of the purchaser, unless it has been reserved from sale or has been previously sold, and then the entry might be canceled on the ground of mistake. But when there is no such mistake, the holder of the certificate of entry or location, having purchased and paid for the land, is the owner thereof, and, although the naked technical legal title remains in the United States until the patent is issued, yet, in equity, the title is in the purchaser. The holder of the certificate is the owner in the same sense as if he held the patent. The issuance of the patent only perfects the evidence of his ownership." And in *Goodlet* v. *Smithson,* 5 Port. 245 (30 Am. Dec. 561), it is held that a purchaser of land from the United States acquires an inchoate legal title which he may alienate or devise in the same manner as any other legal title; that the law under which the purchase is made and not the patent gives the title and the patent is but evidence that the prerequisites of a legal sale have been complied with.

In this case there is no contention that Dysinger's purchase was not made in good faith and in strict compliance with the law. When, therefore, he made full payment of the purchase price and received his final certificate or receipt, the land became to all intents and purposes his "real property." He was thereafter as much the owner as if he actually had the patent. The land was subject to taxation as his property (*Carroll* v. *Safford,* 44 U. S. 441), and it could be alienated or devised as such: *Sillyman* v. *King,* 36 Iowa, 207. It was not necessary for him to invoke the aid of a court of equity to ascertain or establish his interest. That was fixed and determined by the law under which he made the purchase. Nothing remained for him to do but to await the final issuance of a patent in due course. There is no reason why land held under such a title should not be considered real property within the meaning of the statute and subject to the lien of a judgment against the owner, and such is the opinion of the text writers and adjudged cases: 1 Black, Judgments, § 422; 1 Freeman, Judgments, § 356; *Pogue* v. *Simon,* 47. Or. 6 (114 Am. St. Rep. 903: 8 Am. & Eng. Ann. Cas. 474: 81 Pac. 566) ; *Goodlet* v. *Smithson,* 5 Port. 245 (30 Am. Dec. 561).

3. The judgment in favor of Andrews and against Dysinger was rendered June 15, 1892, but was not entered in the lien docket until June 14, 1902, and counsel for the plaintiff contends that because it was not docketed "immediately" after its rendition, the right to docket it at all was lost. The statute provides that "immediately after the entry of judgment in any action, the clerk shall docket the same," etc.: B. & C. Comp. § 205. But this is a direction to the clerk and a failure by him to discharge his duty in the premises does not affect the validity of the judgment or deprive the judgment creditor of the benefit of the lien created thereby when it is properly docketed. The object of requiring a judgment to be entered in the judgment docket is to notify intending purchasers and incumbrancers of the date of the rendition of the judgment and the amount of it. The judgment becomes a lien on the prop-

erty of the judgment debtor from the date of its docketing and the only question pertinent to the present inquiry is whether the judgment was in fact properly docketed at the time of plaintiff's purchase. If so, the object of the statute was accomplished and he cannot complain because the judgment was not docketed at an earlier date.

4. Complaint is made because in the clerk's certificate to the transcript of the judgment docket of Lane County filed in the clerk's office of Coos County, it is stated that such transcript is a true and correct copy of the original circuit court "judgment lien docket"; while such record is denominated in the statute "judgment docket": B. & C. Comp. § 584. But from the entry itself it appears that it was made in a book in which the judgments and decrees of the circuit court were docketed and substantially conforms to the requirements of Section 584, contains the information required to be entered in the judgment docket, and was, therefore, sufficient.

There are some technical objections to the validity of the lien, but they are without merit. The entries in the circuit court judgment docket of Coos County, when explained by the certified transcript on file with the clerk, show that the judgment of Andrews against Dysinger was rendered in the circuit court for Lane County, was entered in the journal of that court, and was docketed in the circuit court docket of both Lane and Coos counties on certain dates. Finding no error in the decree, it is affirmed.     AFFIRMED.