(69 N. W. Rep. 53.)

---

GUARANTY SAVINGS BANK *vs.* ALBERT BLADOW, *et al.*

Opinion filed November 10th, 1896.

**Public Lands—Patent—Cancellation—Notice to Mortgagee.**

> The fact that the mortgagee of the holder of a patent certificate may not have had notice of the proceedings to cancel such certificate, or any opportunity to be heard therein, does not render void the action of the land department in canceling such certificate, but merely entitles him to a hearing on the question of the legality of the original entry in a proper action in court. In such action the burden of proof is upon him to make out a *prima facie* case, the certificate after cancellation being no longer any evidence to support his claim.

**Rights of Mortgagee Before Foreclosure Not Determined.**

> Whether a mortgagee, without foreclosing his mortgage, and securing by purchasing on the foreclosure sale the interest of the mortgagor, can maintain an action to have the holder of a patent based upon a subsequent entry decreed to be a trustee for him on the theory that the original entry was legal, and should not have been canceled, not decided in this case.

Appeal from District Court, Richland County; *Lauder,* J.

Action by the Guaranty Savings Bank against Albert Bladow, Charles Anderson and Franklin Hall. From a judgment for defendants plaintiff appeals.

Affirmed.

*Fred B. Morrill,* for appellant.

The entry made by Anderson was cancelled by the commissioner on the contest initiated by Bladow, in which case the mortgagee was not made a party defendant or served with any notice whatever. The power vested in the commissioner is not

arbitrary, unlimited or discretionary, but must be exercised in accordance with law. *Bogan* v. *Edinburgh, etc., Co.,* 63 Fed. Rep. 192; *Cornelius* v. *Kessel,* 128 U. S. 456; *Lindsey* v. *Hawes,* 2 Black 554; *Stimson* v. *Clark,* 45 Fed. Rep. 760. Anderson's proof and payment had been accepted by the agents of the government and final receipt issued to him. By such purchase the land became subject to the incidents of private ownership and Anderson could legally mortgage it before issuance of a patent. *Carrol* v. *Safford,* 3 How. 450; *Witherspoon* v. *Duncan,* 4 Wall. 210; *United States* v. *Budd,* 144 U. S. 154. The mortgagee acquired a property interest in the land and the ruling of the commissioner without notice to him was not due process of law. 2 Kent Com. 13; *Westervelt* v. *Greggs,* 12 N. Y. 202; *Bank* v. *Akely,* 4 Wheat 235; *Hurtado* v. *California,* 110 U. S. 516; *Leeper* v. *Texas,* 139 U. S. 467. Property rights of an individual cannot be divested without granting him a hearing. *Windsor* v. *McVeigh,* 93 U. S. 274; *Lewis* v. *Shaw,* 57 Fed. Rep. 516; *Hollingsworth* v. *Barbour,* 4 Pet. 466; *Woodruff* v. *Taylor,* 20 Vt. 65. The cancellation of Anderson's entry was void and the entry remains as though it had never been cancelled, and patent to the land should have been issued upon application of the plaintiff under § 7 of the Act of March 3rd, 1891 (26 St., At Large 1095.) This statute is remedial and the broadest possible scope towards effecting the object for which it was enacted, that its language will imply, must be given to it. Suth. St. Cr. § 207; *Hudler* v. *Golden,* 36 N. Y. 446; *Cullerton* v. *Mead,* 22 Cal. 96; *Oates* v. *First Nat. Bank,* 100 U. S. 239; *Smith* v. *Stevens,* 82 Ill. 554; *C., B. & Q. Ry. Co.* v. *Dunn,* 52 Ill. 260; *Rockford R. I. & St. L. Ry. Co.* v. *Heflin,* 65 Ill. 366; *Hudley* v. *Morrison,* 39 Ill. 392. Where the land department has mistaken the law, courts of justice have power to inquire into and correct mistakes, injustice and errors. *Johnson* v. *Towsley,* 13 Wal. 72; *Stark* v. *Starrs,* 6 Wal. 402; *Lindsey* v. *Hawes,* 2 Black 554; *Cornelius* v. *Kessell,* 128 U. S. 456; *Widdicombe* v. *Childers,* 124 U. S. 400; *Moore* v. *Robbins,* 96 U. S. 530; *Bernier* v. *Bernier,* 147 U. S. 242; *Perry* v. *O'Hanlan,* 11 Mo. 373;

*Risdon* v. *Davenport,* 57 N. W. Rep. 482. The defendant, Bladow, became the owner by purchase of the title acquired by Anderson subject to the mortgage. He is estopped from setting up any defense to the validity of the mortgage subject to which he purchased the land. Jones on Mortgages, §736; *Johnson* v. *Thompson,* 129 Mass. 393; *Luite* v. *Stevens,* 98 Mass. 305; *Howard* v. *Chase,* 104 Mass. 249; *Hancock* v. *Fleming,* 3 N. E. Rep. 254; *Atherton* v. *Toney,* 43 Ind. 211; *Manwarring* v. *Powell,* 40 Mich. 371; *Fuller* v. *Hunt,* 48 Ia. 163; *Swertzer* v. *Jones,* 35 Vt. 317; *Thredgill* v. *Pintard,* 12 How. 24.

*W. E. Purcell* and *Chas. E. Wolfe,* for respondents.

An entryman making a fraudulent entry of public land acquires no vested right of property in it. *American Mortgage Co.* v. *Hopper,* 64 Fed. Rep. 557; *U. S.* v. *Peterson,* 50 Fed. Rep. 507. The Amistead, 15 Pet, 518; *League* v. *DeYoung,* 11 How. 185; *Parsons* v. *Venzke,* 4 N. D. 452, 61 N. W. Rep. 1036. This court can not question the finding of fact by the commissioner. *Mortgage Co.* v. *Hopper,* 64 Fed. Rep: 557; *Parsons* v. *Venzke,* 61 N. W. Rep. 1036, 4 N. D. 452. Anderson acquired no title and plaintiff could acquire none. The protection of a *bona fide* purchaser relates to the legal title, or to such a right. as is completely determined. So long as something remains. to be done affecting the right those purchasing do so at their peril. *American Mortgage Co.* v. *Hopper,* 56 Fed. Rep 74, S. C. 64 Fed. Rep. 553; *Jordan* v. *Ward,* 64 Fed. Rep. 905. In this case Bladow's land would not be liable to the mortgage even if he had given it himself. *Bull* v. *Shaw,* 48 Cal. 455; *Anderson* v. *Carkins,* 135. U. S. 483. Bladow is not estopped to defeat the pretended lien of this mortgage. *Kraft* v. *Baxter,* 16 Pa. 739; *Shoreman* v. *Eakin,* 1 S. W. Rep. 559; *Bowling* v. *Roork,* 24 S. W. Rep. 4. The mortgage in so far as it might affect the real title to this land was void at its inception. *Mellison* v. *Allen,* 2 Pa. 97; *Brewster* v. *Maddon,* 15 Kan. 249; *Webster* v. *Luther,* 52 N. W. Rep. 271; *Gregory* v. *Kenyon,* 52 N. W. Rep. 685. *Mulloy* v. *Cook,* 10 S. W. Rep. 349. The cove-

nants in the mortgage would estop the mortgagor. *Robinson* v. *Bailey*, 26 Fed. Rep. 223; *Alt* v. *Banholzer*, 40 N. W. Rep. 830; *Giles* v. *Miller*, 54 N. W. Rep. 551.

CORLISS, J. As originally instituted, this action had for its sole object the foreclosure of a mortgage. But on the trial it developed into a controversy over the legality of the cancellation by the land department of a homestead entry. The cause has been argued in this court on the theory that the plaintiff was in position to challenge the validity of such cancellation, and to secure the benefits of the patent subsequently issued by the government to a third person, based upon a new entry. The original entry was made by one Anderson in January, 1881. In July, 1881, he executed a mortgage upon his interest in the land to secure the payment of $450. This mortgage was in June, 1882, assigned to plaintiff. It is to foreclose this mortgage that this action was commenced. Subsequently to the execution thereof the land was conveyed to the defendant, Bladow. Thereafter such proceedings were had before the land department that on November 14, 1887, the commissioner thereof ordered that the entry made by Anderson be cancelled. In these proceedings the commissioner found as a fact that Anderson had never resided upon the land, as required by law, but that his entry was fraudulent, and the entry was canceled on that ground. Neither the original mortgagee nor the plaintiff was a party to these proceedings; or had any notice of them. So far as they were concerned, such proceedings were *ex parte*. Notice of the hearing was, however, served on Anderson by publication in accordance with the rules and practice of the land department. It is undisputed that the mortgagee loaned his money and took his mortgage in good faith, and for value, and that he had no actual knowledge of the fact that Anderson's entry was fraudulent. After the original entry was canceled, defendant, Bladow, made a homestead entry upon the same land, and subsequently obtained a patent therefor, based upon such entry. The decree in this case sustains this patent, and adjudges that the mortgage

is therefore not a lien upon the land, but is a cloud thereon, and should accordingly be canceled. From this decree the plaintiff appeals.

In deciding this case we will adopt a theory more favorable to the plaintiff than the record will justify. We will assume that it has foreclosed its mortgage, and has secured the rights of the mortgagor in the land. The only feature which distinguishes this case from *Parsons* v. *Venzke*, 4 N. D. Rep. 452, 61 N. W. Rep. 1036, is the fact that the holder of the mortgage was not a party to the proceedings in the land department which culminated in the cancellation of Anderson's entry. This fact does not, however, render the cancellation a nullity as to the mortgagee. The land department has, until a patent has been issued, complete control of the question whether it will cancel an entry. Its power is not dependent on jurisdiction over the person of any one, as the authority of a court is. By the issue of a certificate it does not lose control over the land. Such certificate is, in effect, no more than a statement that *prima facie* the person to whom it is issued appears to be entitled to a patent. Whether subsequent investigation will lead to a different conclusion is left unsettled; and whoever deals with the holder of such certificate is chargeable with knowledge that the proceedings instituted to secure the legal title to the land from the goverment are in fieri, and that the land department may at any time revoke the certificate, thus destroying the entryman's *prima facie* right to the patent. What procedure it will adopt, what persons it will notify, or whether it will proceed on notice at all or not, are matters within the discretion of the department, so far as the mere matter of power is concerned, congress not having prescribed any practice in such cases. No matter how abitrary the land department may act, its cancellation is not a mere nullity. But such arbitrary action will, however, entitle the entryman to a hearing in court; and on this hearing he will be allowed to show that as a matter of fact his entry was not fraudulent. But no such showing was made in this case. Indeed, it is not claimed that the entry was

not in fact fraudulent. The land department has in such a case, it is true, in the exercise of its undoubted power, destroyed his *prima facie* evidence of right to a patent, but because it has acted in an arbitrary manner—has denied him a hearing—the law will permit the entryman to prove in court the facts showing his entry to be valid, because the law regards the rights of an entry-man, who has in good faith complied with the statute, as property rights, and will give him an opportunity to defend such rights, either in the land department, or if he is there denied a chance to protect himself, in the proper judicial tribunals. The only effect of the doctrine that an *ex parte* cancellation of an entry is not a mere nullity is to place the burden of proof upon the entryman, or those who claim under him. But it cannot be disputed that the land department might, despite the fact that he holds a certi-ficate, require the entryman to furnish additional proof of his good faith and his compliance with the requirements of law on proceedings in the department instituted for the purpose of can-celing his entry. The land department may, notwithstanding the fact that it has issued a final certificate, compel the entryman, or any one claiming under him, to assume the burden of proof on penalty of having the entry canceled if additional proof is not produced. The utmost scope of the effect of the doctrine that an *ex parte* cancellation is valid is to cast upon the entryman in the court the very burden of proof which may be imposed upon him in the department itself. The contention against the sound-ness of this doctrine must be that he has a vested right to use the certificate as *prima facie* evidence of his right to a patent. There is nothing in the acts of congress to warrant such a view; and to assert that it is sound on general principles is to assume the very point in controversy. The utmost which it can be said that the government has done in issuing the certificate to him is to give him an instrument which will *prima facie* show that he is entitled to a patent so long as this instrument remains unannulled; but the same power which issued it is vested by congress with full control

N. D. R.—8

over it, and may revoke it at any time; and the destruction of it carries along with it the necessary consequence that it can no longer be presented in evidence to any tribunal as the declaration of the government that the person named in it has complied with the law, and is entitled to a patent. But, after a person has been accepted by the government as an entryman, it cannot escape the issuance of a patent to him if his entry was in fact legal, and this fact he may prove in the proper judicial tribunal, if he is denied a hearing in the land department. In this way his property rights are fully protected. As he is compelled to pursue the legal title in the hands of one who has succeeded to the rights of the government, he is of necessity obliged to make out as against such person a legal right to demand the patent from the government. This he must do by evidence showing that his entry was in fact legal. He cannot use the canceled certificate for that purpose, for to insist upon his right to use it is to assume the legality of the entry,—the very question to be established. He could not, as a matter of right, use it as *prima facie* evidence in the land department before cancellation, on the trial of the issue whether his entry was legal. How, then, can he claim that he has such a right to use it as evidence in a court after cancellation, as constitutes a vested property right? It is obvious that, if the mere fact that a cancellation of an entry was *ex parte* gives the entryman an absolute right to secure the patent from a third person, to whom it has been issued, then it is of positive benefit to a fraudulent entryman to be denied a hearing in the land department. The denial of a hearing, although upon such hearing he would be defeated, places him in an impregnable position in his contest for the title. The very most which can possibly be claimed is that the original entryman should not be required to make out a *prima facie* case by evidence, but should be permitted to rely upon the cancelled certificate as creating a presumption in his favor. This position, we have seen, is not tenable. The reasoning of this court in the case of *Parsons* v. *Venzke*, leads logically to the conclusion we have reached. The

case of *Mortgage Co.* v. *Hopper*, 56 Fed. 74, affirmed 12 C. C. A. 293, 64 Fed. 553, is directly in point. See, also, *U. S.* v. *Steenerson*, 1 C. C. A. 552, 50 Fed. 507.

We are not unmindful of the fact that, in view of delays in the issuance of patents, and the rule of law that until a patent has been issued the courts have no jurisdiction to redress the wrong done the original entryman or his grantee or mortgagee by an *ex parte* cancellation, injustice may result from the doctrine that the land department may thus impose upon such persons the burden of proving the original entry to have been legal. The earliest period at which they can adduce proof to sustain the entry may be so remote from the time when such entry was made that no evidence can be obtained by them to support what was in fact a perfectly valid entry. But cases presenting these extreme features will not frequently arise, and those who find themselves in this predicament are always somewhat in fault in not discovering the fact of the cancellation, and making an effort to be heard in the land department, to have the original entry reinstated. Moreover, in such cases the courts would incline to consider slight evidence as sufficient *prima facie* proof that the original entry was in fact valid, and compel the holder of the patent to sustain by evidence the finding of the department that it was illegal. No hardship could result to the holder of the patent from such a rule, for the fact that the cancellation of the original entry was *ex parte* will appear from the records of the land office, and he is therefore chargeable with knowledge that the question of fact whether such entry was legal is still open to investigation in the courts, and that from the very nature of the case the original entryman, or those claiming under him, should not be held, after the lapse of a considerable period of time, to a high degree of proof to establish a *prima facie* right.

It is urged that, inasmuch as defendant, Bladow, who made the second entry, and subsequently secured the patent, was also the person who succeeded to Anderson's interest in the land he is estopped from claiming that the mortgage is not a lien on the

land.  But Bladow did not assume the mortgage, nor did the
deed to him even state that he took the land subject to the mort-
gage.  There is no element of estoppel in the case.  Bladow is·
not questioning the legal sufficiency of the mortgage as a contract,
nor does he assert that it is not a lien on whatever interest Ander-
son had in the land.   He is merely claiming title from a different
source.  When he purchased the land from Anderson's grantee,
he entered into no implied agreement that, in case Anderson's
entry was fraudulent, and was finally overthrown, he would not
purchase the land from the government without taking care of
the mortgage debt.  He did not borrow the money, or assume
the mortgage, nor are we able to  discover from  this  record  that
he is even under any moral obligation to see that it is paid.  The
amount of such mortgage does not appear to have been deducted
from  the  purchase  price  when  he  bought  from  Anderson's
grantee; and, if this were the fact, he would be under no legal or
moral obligation to pay it under the facts of this case, for it
appears that every dollar he paid for Anderson's title was money
thrown away.  The deed he obtained gave him no title, nor did
it place him in a position to contest the legality of Anderson's
entry different from  that which  he  occupied before  it  was
delivered to him.  It was of no advantage to him whatever.

The judgment of the District Court is affirmed.  All concur.
(69 N. W. Rep. 41.)