Argued 17 July; decided 4 August, 1902.

## SMALL v. LUTZ.

[67 Pac. 421; 69 Pac. 825.]

RE-ENACTMENTS—STATUTES—APPEAL—SURETY COMPANIES.

1. A re-enactment of a former statute is to be read as part of the earlier and not of the new one, if the latter is in conflict with another act passed after the former but before the later act, and therefore does not impliedly repeal the intermediate act; for example, an old act provided that the qualifications of sureties on appeal bonds should be the same as in case of bail on arrest, and that they should justify in like manner if excepted to. In 1899 a law was passed authorizing surety companies to become surety on all classes and kinds of bonds, and providing that an undertaking executed by a licensed surety company should be a

full compliance with all laws and requirements as to qualification and justification of sureties; and a few days later in the same session another act was passed relating to the taking of appeals, modifying the manner of giving and serving notice, but re-enacting the old statute as to sureties. Then in 1901 there was still another act again changing the method of giving and serving both the notice of and undertaking on appeal, but continuing the old provisions as to the qualification and justification of sureties. *Held*, that the modifications of 1899 and 1901, being merely re-enactments of the law as it stood before the passage of the first act of 1899 authorizing surety companies to become sureties on undertakings in appeal, do not impliedly repeal that act, but were intended only to change the manner of giving notice of an appeal, and to require the undertaking to be served on the adverse party.

SWAMP LANDS—WHEN TITLE PASSES FROM THE GOVERNMENT.

2. The grant by the United States to certain states under the swamp land act was not a grant *in praesenti* of the land listed as in said act provided, but the listing is only a step toward transferring the title, and until the issuance of the patent the legal title remains in the general government, and its action in conveying the title is absolutely and finally conclusive: *Gaston* v. *Stott*, 5 Or. 48, and *Miller* v. *Tobin*, 16 Or. 540, overruled.

PUBLIC LANDS—HOMESTEAD ENTRY—DEED FROM STATE.

3. A determination by the Secretary of the Interior, on an application for a patent, that the lands applied for were subject to homestead entry, is conclusive as against one to whom the land had previously been conveyed by the state under a list of swamp lands the approval of which had been revoked after such conveyance and without notice to the grantee therein.

From Lake: HENRY L. BENSON, Judge.

Suit by George H. Small against Elmer D. Lutz, to remove a cloud from the title to certain land. There was a decree for plaintiff, from which defendant appealed. A motion to dismiss the appeal was overruled, and the opinion on the motion is printed with the opinion on the merits.

MOTION OVERRULED: REVERSED.

Decided 27 January, 1902.

ON MOTION TO DISMISS APPEAL.

*Mr. Chas. A. Cogswell,* for the motion.

*Mr. Benjamin B. Beekman, contra.*

PER CURIAM. This motion involves the sole question as to whether a qualified surety company may become surety on an undertaking for an appeal. In 1899 the legislature passed an act

authorizing such companies to become sureties on undertakings, including those required on appeals, which provides that an undertaking so executed shall be a full and complete compliance with all requirements respecting number, character, qualification, and justification of sureties: Laws, 1899, p. 195, § 6. At the same session an act was passed amending Section 537, Hill's Ann. Laws (Laws, 1899, p. 228), relating to appeals, which re-enacts the provision of the act of October 27, 1870, that the qualification of sureties in undertakings on appeal shall be the same as in bail on arrest, and, if excepted to, shall justify in like manner. In 1901 the section was again amended by requiring the undertaking on appeal to be served on the adverse party, but re-enacting the previous provision as to the qualifications of sureties on the undertaking: Laws, 1901, p. 77. The contention is that the acts of 1899 and 1901 in reference to procedure on appeal operated to repeal by implication the provision of the statute making surety companies qualified sureties in undertakings on appeal. A sufficient answer to this position is that the provision in the acts amending Section 537, in reference to the qualification of sureties on appeal bonds, is not a new legislative declaration on the subject, but merely a re-enactment of the law as it stood long prior to the act authorizing surety companies to do business in the state, and is therefore not in conflict with the latter act, and does not operate to repeal it: Endlich, Interp. Stat. § 194; *Eddy* v. *Kincaid,* 28 Or. 537 (41 Pac. 156, 655); *Powell* v. *King,* 78 Minn. 83 (80 N. W. 850). An examination of the amendatory acts clearly shows that the sole purpose thereof was to change the manner of giving notice of an appeal, and to require the undertaking to be served on the adverse party, and not to revise the subject of undertakings on appeal or the qualification of sureties therein. The motion is therefore denied.

MOTION OVERRULED.

Decided 4 August, 1902.

ON THE MERITS.

This is a suit to remove a cloud from the title to one hundred and sixty acres of land in Lake County. The plaintiff asserts

title under the act of congress of March 12, 1860 (12 Stat. 3), extending to Minnesota and Oregon the swamp land act of 1850 (9 Stat. 519), and the defendant through a patent from the United States under the homestead law. On September 16, 1882, the Secretary of the Interior listed and certified the tract in controversy, with other lands, aggregating over 87,000 acres, to the state as swamp and overflowed, and inuring to it under the act of congress referred to; such list being known and designated as "Approved List No. 5." On September 28, 1886, the state conveyed the land in dispute to J. M. Allen, and the plaintiff has succeeded to Allen's title by mesne conveyances. After the conveyance by the state to Allen, it was reported to the land department by one of its special agents that the report upon which list No. 5 had been prepared and approved was false and fraudulent. On January 20, 1887, the state was notified to show cause why such approval should not be set aside and revoked for that reason. Such proceedings were thereafter had in the land department that, on December 27, 1887, the Secretary of the Interior revoked and canceled the approval of list No. 5 (7 Dec. Dept. Int. 572), and the land in controversy has never been otherwise listed or patented to the state as swamp land. On March 28, 1893, the defendant settled upon and entered it under the homestead law as unappropriated public land of the United States. On January 20, 1894, he commuted his entry, and on April 15, 1895, a patent therefor was regularly issued to him in due form. This suit is for the purpose of setting aside and annulling such patent, on the ground that it is void because the land was in fact swamp and overflowed, and passed to the state by the swamp land act. The complaint alleges that the land in 1860 was, ever since has been, and now is swamp and overflowed land, within the meaning of the law of congress. This averment is denied by the answer, and oral evidence was given at the trial, over the objection of both parties, in support of their respective positions, the plaintiff objecting on the ground that the question was settled by Approved List No. 5, and the defendant that it was concluded by the patent to him. The court below held, in substance, that the approval of list No. 5 by the Secretary of the

Interior was a conclusive adjudication that the land was swamp and overflowed, within the terms of the swamp land act, and the subsequent cancellation thereof was void as to the plaintiff because made without notice to his grantor; that therefore, at the time of defendant's settlement, the land in question was not open to settlement under the homestead law, and as a consequence the patent issued to the defendant is void, and should be set aside. A decree was entered accordingly, from which the defendant appeals.                                            REVERSED.

For appellant there was a brief over the name of *Watson & Beekman* with an oral argument by *Mr. Edward B. Watson.*

For respondent there was a brief and an oral argument by *Mr. Chas. A. Cogswell.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

2. Whatever may have been the opinion as to the proper construction of the swamp land act prior to the decision of the Supreme Court of the United States in *Michigan L. & Lum. Co.* v. *Rust,* 168 U. S. 589 (18 Sup. Ct. 208), it is now settled that under such act the legal title to the land remains in the general government until patent issues, and the land department has power and authority to inquire into the legality and extent of rights claimed under the act. It is also settled that the listing and platting of certain lands to the state as swamp and overflowed, by the Secretary of the Interior, is not conclusive, but may be revoked and annulled at any time prior to the issuance of a patent by that officer or successor: *Brown* v. *Hitchcock,* 173 U. S. 473 (19 Sup. Ct. 485). But it is argued that the order canceling and revoking list No. 5 was void as to the plaintiff because made without notice to his grantor. As we understand the law, the fact that the grantee of the state may not have been notified of proceedings to cancel the approval of a list of lands as swamp and overflowed does not render void the action of the land department in canceling the same, but merely entitles

him to a hearing in the proper forum as to whether the lands were in fact swamp and overflowed within the terms of the grant: *Guaranty Sav. Bank* v. *Bladow,* 6 N. D. 108 (69 N. W. 41) ; *Guaranty Sav. Bank* v. *Bladow,* 176 U. S. 448 (20 Sup. Ct. 425) ; *Hawley* v. *Diller,* 178 U. S. 476 (20 Sup. Ct. 986) ; *California Redwood Co.* v. *Little* (C. C.), 79 Fed. 854; *American Mtg. Co.* v. *Hopper,* 64 Fed. 553 (12 C. C. A. 293). Practically the same question was decided in *Guaranty Sav. Bank* v. *Bladow,* 176 U. S. 448 (20 Sup. Ct. 425). In that case the final certificate of a homestead claimant had been canceled after notice to the entryman, but without notice to his mortgagee. It was held that the cancellation was conclusive against the entryman upon all questions of fact, and could not be regarded as a mere nullity when set up against his mortgagee, although the latter had no notice of the proceeding to cancel the certificate. "This result follows," says Mr. Justice PECKHAM, "by reason of the character of the entry, and of the certificate given thereon. It does not transfer the title to the land from the United States to the entryman, and it simply furnishes *prima facie* evidence of an equitable claim upon the government for a patent, and the use of the certificate for that purpose is subject to be destroyed by cancellation thereof under direction of the department. This is the legal effect of such certificates, and all who deal in them, or found any right upon them, must be held to do so with full knowledge of the character of such papers. But the cancellation, although conclusive as to the entryman upon all questions of fact, if made after notice to him, would not be conclusive upon the mortgagee, if made without notice to such mortgagee, and with no opportunity on its part to be heard; that is, it would not prevent the mortgagee, before the issuing of a patent, from taking proceedings in the land department, and therein showing the validity of the entry, or from proceeding before a judicial tribunal against the patentee, if a patent had already issued, and therein showing the validity of the entry; such proof in each case would, however, have to be made by evidence other than the certificate which had been canceled. Had the mortgagee taken either of these courses, it might have demanded in the one case,

upon proving the validity of the entry, that a patent should be issued to the mortgagor or his grantees, leaving the land subject to the lien of the mortgage, or, if a patent had been issued, the mortgagee might then have demanded relief against the patentee upon proof of the validity of the entry, in a proceeding in court to hold him as trustee."

This same principle must necessarily apply to the listing of land to the state by the Secretary of the Interior under the swamp land act. He is required to "make out an accurate list and plats of the lands" described in the act, and cause a patent to be issued to the state therefor, and upon the issuance of such patent, and not before, the legal title vests in the state. The making and forwarding to the governor of the list and plats is but one step in the process of the administration of the law. It does not transfer the title from the United States to the state, nor does it devest the land department of control over the land. It is only *prima facie* evidence of the right of the state to a patent. Until the patent has been issued, the land department may determine for itself under what circumstances and upon what notice it will revoke and cancel the list. All who deal with the state, or base any rights upon the approved list, are chargeable with knowledge of its character, and of the fact that the proceedings to secure the legal title are incomplete, and that it is within the power of the land department at any time to revoke the list; thus destroying the *prima facie* evidence of the right to a patent. If the cancellation is made without notice to a grantee of the state, it is not conclusive as to him, and does not destroy his equitable title. He still has the right to show, if the facts are with him, by evidence other than the approved list, that the land was in fact within the terms of the swamp land grant, and should be listed and patented to the state. But, in our opinion, this showing must be made to the Secretary of the Interior, and before the legal title passes from the government. By the swamp land act, it is made the exclusive duty of that officer to determine what lands are within the grant. His office is made the tribunal whose decision upon that subject is controlling. It is for him alone to pass upon that question, and his

judgment as to the character of the land is final and conclusive: *Heath* v. *Wallace,* 138 U. S. 573 (11 Sup. Ct. 380) ; *Chandler* v. *Calumet Min. Co.,* 149 U. S. 79 (13 Sup. Ct. 798) ; *McCormick* v. *Hayes,* 159 U. S. 332 (16 Sup. Ct. 37). When the defendant's application for a patent was made under his homestead entry, it became the duty of the Secretary of the Interior, as the head of the land department, and by virtue of his general control over the disposition of the public lands, as well as under the provisions of the swamp land act, to ascertain whether the land applied for was in fact public land, and, when the defendant's final proof was accepted, and a patent issued to him, it was in legal contemplation decided that the land was not swamp and overflowed within the terms of the grant to the state. The acceptance of defendant's final proof, and the issuance of a patent to him, were, so far as appears, made in the regular course of business and orderly administration of the laws of the United States relating to the disposition of public lands, after the usual notice in such cases. The plaintiff could have appeared and contested the defendant's right to a patent, on the ground that the land was in fact swamp and overflowed, and passed to the state by the swamp land act. He did not pursue that course, but, nevertheless, the action of the land department is as conclusive upon him as if he had appeared and made an unavailing contest.

3. It was for a time supposed, and so held by the courts and the land department, that the swamp land act was a grant *in praesenti,* so that the title to the state to such land dated from the passage of the act, and consequently that the government of the United States thereafter had no title that it could transfer to a homestead or pre-emption claimant; hence a patent to such a claimant was void, and of no force or effect whatever. According to recent decisions, particularly *Michigan L. & Lum. Co.* v. *Rust,* and *Brown* v. *Hitchcock,* this was an erroneous interpretation of the law, and, although the act is in its terms a grant *in praesenti,* the legal title to the land remains in the general government, subject to its control and disposition until a patent has been issued therefor. The title, therefore, was in the govern-

ment of the United States at the time the defendant applied for a patent, and it was the duty of the Secretary of the Interior to determine the character of the land before issuing such patent. The decision that it was open to settlement under the homestead law was, in effect, a holding that it was not swamp or overflowed within the meaning of the swamp land act, and as this involved a question of fact, to be determined on oral testimony, the decision cannot be impeached or questioned except in a court of equity, for fraud or mistake other than an error of judgment. "That department [land department], as we have repeatedly said," declares the Supreme Court of the United States in *Steel* v. *Refining Co.,* 106 U. S. 447, "was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. Such has been the uniform language of this court in repeated decisions." And in *Burfenning* v. *Chicago, St. Paul, etc. Ry. Co.,* 163 U. S. 321 (16 Sup. Ct. 1018), the language of the court was: "It has undoubtedly been affirmed over and over again that, in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the land department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the land department, one way or the other, in reference to these questions, is conclusive, and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be re-examined." See, also, *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Johnson* v. *Drew,* 171 U. S. 93 (18 Sup. Ct. 800). It has accordingly been held that

parol evidence is not admissible to show that land covered by a patent under the swamp land act was in fact not swamp (*French* v. *Fyan,* 93 U. S. 169), or that land patented to a pre-emption claimant (*Ehrhardt* v. *Hogaboom,* 115 U. S. 67, 5 Sup. Ct. 1157), or certified by the Secretary of the Interior as inuring under a railroad grant (*Rogers Locomotive Works* v. *American Emigrant Co.,* 164 U. S. 559, 17 Sup. Ct. 188), or patent to a wagon road company (*Pengra* v. *Munz,* 29 Fed. 830, 12 Sawy. 231), was in fact swamp and overflowed. It has been thought that a different doctrine was announced in *Wright* v. *Roseberry,* 121 U. S. 488 (7 Sup. Ct. 985), but, as explained in *McCormick* v. *Hayes,* 159 U. S. 332 (16 Sup. Ct. 37), this is a mistaken view of the decision. *Gaston* v. *Stott,* 5 Or. 48, and *Miller* v. *Tobin,* 16 Or. 540 (16 Pac. 161), were decided prior to the recent decisions of the Supreme Court of the United States construing the swamp land act, and as the question is a federal one the decisions of that court are controlling.

The decree of the court below must be reversed, and the complaint dismissed.                                          REVERSED.